IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03699-KLM

S.J.K.,[1]

      Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]

      Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court[3] on review of the Commissioner's decision denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act").  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The Court has reviewed Plaintiff's Opening Brief [#19],[4] Defendant's Response Brief [#20], Plaintiff's Reply Brief [#21], the Social Security Administrative Record [#13] ("AR"), and the applicable law and is sufficiently advised in the

---

    [1]  Plaintiff is identified by initials only pursuant to D.C.COLO.LAPR 5.2(b).

    [2]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi is substituted as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    [3]  The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See* [#12, #22, #23].

    [4]  "[#19]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

premises.   For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

## I.  Factual Background

Plaintiff applied for disability insurance benefits on October 8, 2014, alleging disability beginning May 15, 2013.  AR 415-18.  The claim was initially denied on April 14, 2015, and upon reconsideration on August 21, 2015.  *Id*. 112-13, 188-194.  Plaintiff filed a request for a hearing (*id*. 195-196), and a hearing was held on July 17, 2017 (*id*. 70-110). On November 22, 2017, the Administrative Law Judge (the "ALJ") issued an unfavorable decision.  *Id*.  151-175.

Plaintiff timely filed a Request for Review of Hearing Decision.  The Appeals Council granted her Request for Review, and the matter was remanded to an ALJ.  AR 176-77.  A new hearing was held on July 23, 2020, before a different ALJ.  *Id*. 44-69. At the hearing, Plaintiff's request that the claim be amended to a closed period ending on October 9, 2019, was granted by the ALJ.  *Id*. 50.  On August 19, 2020, the ALJ issued an unfavorable decision (*id*. 44-69), which is before the Court on appeal.

The ALJ followed the five-step sequential evaluation process for disability claims. *See* 20 C.F.R. § 404.1520.  The ALJ found at step one of the sequential evaluation that Plaintiff met the insured status requirements through December 31, 2020.  AR 17.  The ALJ also found that Plaintiff has not engaged in substantial gainful activity from her alleged onset date of May 15, 2013, through the end of the closed period on October 9, 2019.  *Id*. 18.

At step two of the sequential evaluation, the ALJ found that Plaintiff has the following

severe impairments: "Degenerative Disc Disease (DDD) of the lumbar spine; Costochondritis; Asthma/COPD; Major Depressive Disorder (MDD); Generalized Anxiety Disorder (GAD); Post-Traumatic Stress Disorder (PTSD); Panic Disorder; Patellofemoral Syndrome; Chronic Pain Syndrome/Fibromyalgia; Osteoarthritis; and Migraine Headaches." AR 18. The ALJ found that Plaintiff's osteoporosis had no effect on her ability to perform mental or physical tasks, nor did her restless leg syndrome, so they were not severe impairments, but the ALJ stated that she took all of Plaintiff's impairments into consideration in assigning a residual functional capacity ("RFC"). *Id.* At step three, the ALJ found through the end of the closed period that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.* at 18-21.

The ALJ then turned to the RFC. The ALJ found that Plaintiff has the RFC to:

Perform light work as defined in 20 CFR 404.1567(b), in which she can lift and/or carry 20 pounds occasionally and 10 pounds frequently. They can sit for two hours at one time, and four hours total in an 8-hour workday. They can stand for one hour without interruption, and three hours total in an eight-hour workday. They can walk for one hour at a time, and three hours total in an eight-hour workday. They can never climb ladders, ropes or scaffolds. They can occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl. They can frequently operate foot controls with the bilateral lower extremities. They can occasionally reach overhead with the bilateral upper extremities. They can frequently reach in all other directions with the bilateral upper extremities. They can occasionally push/pull with the bilateral upper extremities. They can tolerate occasional exposure to temperature extremes, vibrations and humidity. They can occasionally operate a motor vehicle. They can tolerate occasional exposure to pulmonary irritants, such as fumes, odors, dusts, gases or poor ventilation. They can tolerate occasional exposure to hazards such as unprotected heights and heavy mechanical machinery (like a jackhammer or tractor). They can tolerate loud noise, such as that of a manufacturing department, heavy traffic, or large earth moving equipment. They can perform simple and detailed tasks and previously learned tasks. They can tolerate occasional interaction with co-workers and the general public. After the job is learned, they can accomplish tasks

independently with occasional interaction with supervisors.  They can never perform customer service as primary job task.  They can work in proximity to others, but should not have any job tasks that require cooperation with others or tandem job tasks.  They can work at a consistent pace throughout the workday but not at a production rate pace where each task must be completed within a strict time deadline.

AR 21.  The ALJ summed up her findings regarding the RFC, stating, "[a]n ability to perform light work with limited standing and walking, or limited intellectual demands and need for interaction, is supported by the claimant's actual ability to work."  *Id*. 29.

The ALJ determined at step four that Plaintiff was unable to perform her past relevant work as a gas station cashier.  AR 31.  Considering Plaintiff's age (44 years old on October 9, 2019), education (9th grade), and RFC, the ALJ found with the assistance of a vocational expert that there were jobs existing in significant numbers in the national economy that Plaintiff could have performed as of October 9, 2019.  *Id*. 31.  This included representative occupations such as merchandise marker, collator operator, and inserting machine operator.  *Id*. 32.  Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act "at any time from May 15, 2013, the alleged onset date, through October 9, 2019, the end of the closed period at issue[.]"  *Id*.  The Appeals Council denied Plaintiff's request for review on November 23, 2020 (AR 1-6), making the ALJ's second decision the final agency decision for purposes of judicial review.  *See* 20 C.F.R. § 404.981.  This appeal followed.

## II.  Standard of Review

Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

A court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. However, it "may not reweigh the evidence nor substitute [its] judgment" for the Commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

### III.  Analysis

Plaintiff argues that the ALJ made numerous errors that require a remand.  First, Plaintiff asserts that the ALJ erred at step three by failing to adequately consider whether the combined effects of Plaintiff's numerous and varied severe impairments met or medically equaled a listing.  *Brief* [#22] at 15-18.  Second, Plaintiff asserts that the ALJ erred by failing to make adequate findings at step four regarding the functional effects of Plaintiff's subjective symptoms, particularly pain and fatigue, and by assigning RFC restrictions related only to Plaintiff's objective symptoms.  *Id*. at 18-20.  Third, Plaintiff asserts that the ALJ's findings regarding the weight to be afforded the opinion evidence are not based on substantial evidence, and do not adequately address the relevant factors set forth in the regulations.  *Id*. at 20-22.  Finally, Plaintiff contends that the ALJ erred because the findings of fact on which she based her RFC, and the finding that Plaintiff was not disabled, were not based on substantial evidence.  *Id*. at 22-26.  The Commissioner responds that the ALJ's decision was supported by substantial evidence, that the Court should not reweigh the evidence, and that the ALJ's decision should be upheld. *See generally Response* [#20] at 3-4.  The Court now turns to the issues raised by Plaintiff.

### A.    Step Three

As noted earlier, the ALJ found that during the period at issue, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of criteria.  AR 20-21.  Here, Plaintiff argues that the ALJ erred by failing to adequately consider whether the combined effects of Plaintiff's "numerous and varied" impairments met or equaled a listing.  *Brief* [#19] at 19.

Pursuant to 20 C.F.R. § 404.1526(b), "[i]f [the claimant has] a combination of

impairments, no one of which meets a listing . . . [the ALJ] will compare [the claimant's] findings with those for closely analogous listed impairments.  If the findings related to [the claimant's] impairments are at least of equal medical significance to those of a listed impairment, [the ALJ] will find that [the claimant's] combination of impairments is medically equivalent to that listing."   In determining whether a claimant with a combination of impairments meets or equals a listing, the ALJ must consider the effect of all of the claimant's medically determinable severe and non-severe impairments.  *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("The regulations require that the claimant's impairments be considered in combination 'throughout the disability determination process,' which includes step three." (quoting 20 C.F.R. §§ 404.1523, 416.923)).  "To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007) (citing 20 C.F.R. §§ 404.1525, 416.925)).

At the outset of her discussion, the ALJ stated: "As an initial matter, the state agency psychological and medical consultants have found that no mental or physical listing of Appendix I was met or equaled."  AR 19 (citation omitted).  Plaintiff argues that "[t]hat very statement reveals the ALJ's error, because it shows that the ALJ (and, in fact, the consultants) considered each listing individually and did not consider their combined effects at any point." *Brief* [#19] at 21.  The Court finds that a plain reading of the ALJ's statement shows no such thing.   In fact, if anything, it is clear that the general statement encompasses consideration of all impairments whether individually or in combination.  In the absence of any legal authority to the contrary, the Court finds no error with respect to

this portion of the ALJ's decision.

Next, Plaintiff argues that the ALJ erred regarding her evaluation of a medical expert, Subramiam Krishnamurthi, M.D. ("Krishnamurthi"). *Brief* [#19] at 21. Here, the ALJ stated:

> [Dr. Krishnamurthi] responded to interrogatories on February 8, 2019, in which he specifically found no listing of Appendix I to have been met or equaled.  Dr. Krishnamurthi diagnosed lumbar spondylosis, under section 1.04 . . . ; asthma under section 3.03 . . . ; patellofemoral syndrome under section 1.02 . . . ; and chronic pain syndrom . . . .  He cited supporting evidence of a knee disorder (including imaging of a Baker's Cyst) . . . ; of asthma . . . ; [and] of lumbar disorder (including facet injections) with imaging . . . .

AR 19.  Plaintiff argues that, "despite the fact that he diagnosed impairments in four separate physical areas, neither he nor the ALJ addressed their combined effects on [Plaintiff's] ability to work, or their relationship to one another in terms of satisfying a listing." *Brief* [#19] at 21.  Plaintiff further notes that "Dr. Krishnamurthi's answers to interrogatories consisted of little more than a list of diagnoses and checking boxes on a preprinted form," and that, "[i]n the section where Dr. Krishnamurthi was asked to 'provide rationale . . . explaining the specific listing(s) considered and why the listing(s) is not met,' he listed the conditions he had diagnosed from the (incomplete) records, and stated where he found the evidence that supported the diagnosis."  *Id.* (citing AR 26 (ALJ noting that, "although Dr. Krishnamurthi could not review all records, the conclusions given remain fairly consistent with the opinion of Dr. Dhiman")).  Plaintiff concludes that "Dr. Krishnamurthi's evidence clearly did not address the issue of combined impairments, and the ALJ's reliance on it demonstrated no analysis of the issue." *Id.*

Plaintiff essentially asserts the same argument with respect to another medical expert, Nitin Dhiman, M.D. ("Dhiman"). *Brief* [#19] at 21.  Here, the ALJ stated:

> [Dr. Dhiman] responded to interrogatives [sic] on April 15, 2020, in which he specified that section 1.04 was not met or equaled because although the claimant carried a diagnosis of low back pain due to [degenerative disc disease], there were no findings of central canal stenosis and encroachment. He also noted that her impairments did not meet or equal section 3.03, . . . despite a diagnosis of asthma or COPD, as her clinical presentations did not satisfy the criteria of that section.

AR 19.  Plaintiff argues that "the ALJ's findings regarding Dr. Dhiman's interrogatories showed no consideration of the combined effects of [Plaintiff's] impairments."  *Brief* [#19] at 21.  Plaintiff asserts that, "[r]ather, he clearly considered each diagnosis individually." *Id.*

Similarly, Plaintiff argues that "[t]he same error occurred in the ALJ's analysis of the psychological experts' opinions cited by the ALJ."  *Id.* at 22.  She states that "[n]either of the experts addressed in any way how [Plaintiff's] several mental health diagnoses might combine with her several physical diagnoses to equal a listing," and that "the ALJ's Paragraph B analysis did not mention or seem to account for [Plaintiff's] physical disorders, in particular her chronic pain and its treatment, in determining her levels of impairment in the four applicable areas of functioning."  *Id.*

Overarching her argument regarding the ALJ's purported errors in relying on the opinion evidence from Dr. Krisnamurthi, Dr. Dhiman, and the psychological experts, Plaintiff argues that her "severe impairments are many and varied, and encompass many interconnected areas of physical and mental functioning," but that, "when determining whether their combined effects met or equaled a listing, the ALJ analyzed each impairment separately, as if the body were not an interconnected entity, but rather a machine where you can replace defective parts one by one."  *Id.*  Plaintiff asserts that "[t]his is contrary to both the law and the intent of the Social Security Act," and that the ALJ therefore erred.

*Id.* (citing 20 C.F.R. §404.1525).  Based on the following, the Court disagrees.

In *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007), like here, the plaintiff argued that "the ALJ failed to consider the combined impact of all her impairments."  The Tenth Circuit noted: "[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter." *Flaherty*, 515 F.3d at 1071 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).  The Tenth Circuit further noted, in addition to this basis for its ruling, that "the ALJ's discussion of the evidence and his reasons for his conclusions demonstrate that he considered all of [the plaintiff's] impairments."  *Flaherty*, 515 F.3d at 1071.

Here, similarly, the ALJ was required to determine whether Plaintiff had a combination of impairments which medically equaled the severity of a listing, and the ALJ did just that.  *See, e.g.*, AR 18 ("Through the end of the closed period, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments . . . ."), 19 (noting that Dr. Krishnamurthi "specifically found no listing of Appendix I to have been met or equaled"), 19 (noting that Dr. Dhiman found that the requirements of Listings 1.04 and 3.03 were not met or equaled), 19 ("The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15").  The Court takes the word of the ALJ that she has considered such issues, particularly here where there is every indication in the ALJ's discussion of the evidence that she considered all of Plaintiff's impairments.  *See Flaherty*, 515 F.3d at 1071.

Importantly, in the Court's view, even assuming error in the ALJ's discussion, Plaintiff has not shown that any such error at Step Three in failing to discuss this issue in

greater detail is harmful.  Plaintiff has not directed the Court's attention to any specific evidence showing that an ALJ could conceivably find that the combined effects of her impairments could equal a Listing, and she has not even directed the Court's attention to any particular Listing she believes she may have met or equaled.  *See, e.g.*, *Lax*, 489 F.3d at 1085 ("To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment.").  While it would not be for the Court to weigh such evidence here in the first instance, Plaintiff must make *some* showing that a remand could possibly be resolved in her favor.  *See, e.g.*, *Pamela Y. v. Kijakazi*, No. 2:21-cv-1082-EFM, 2022 WL 843505, at *6 (D. Kan. Mar. 22, 2022) (stating that the plaintiff "has not come forward with persuasive medical evidence showing that her impairments prevent her from working consistent with the ALJ's RFC.  Thus, the Court concludes that the ALJ's failure to conduct a function-by-function analysis is harmless error . . . .").  Under the circumstances of this case, without such a showing the Court finds that any error committed by the ALJ at Step Three was harmless.

## B.   Step Four

### 1.   Subjective Symptoms

Plaintiff argues that the ALJ erred by failing to make adequate findings regarding the functional effects of Plaintiff's subjective symptoms, specifically her pain and fatigue, and by assigning RFC restrictions related only to her objective symptoms.  *Brief* [#19] at 22.

Social Security Ruling (SSR) 16-3P, 2017 WL 5180304, at *7-8 (Oct. 25, 2017), provides:

In addition to using all of the evidence to evaluate the intensity, persistence,

-11-

and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3) and 416.929(c)(3). These factors include: 1. Daily activities; 2. The location, duration, frequency, and intensity of pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. We will consider other evidence to evaluate only the factors that are relevant to assessing the intensity, persistence, and limiting effects of the individual's symptoms.

"But the ALJ need not consider every one of these factors." *Deherrera v. Comm'r, SSA*, 848 F. App'x 806, 809 (10th Cir. 2021) (citing SSR 16-3P, 2017 WL 5180304, at *8 ("If there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor in the determination or decision because it is not relevant to the case.")). Further, "an ALJ need not engage in 'a formalistic factor-by-factor recitation of the evidence' when evaluating the functional effects of a claimant's subjective symptoms." *Deherrera*, 848 F. App'x at 809-10 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

Plaintiff asserts that, "other than mentioning [Plaintiff's] daily activities, the ALJ's decision is essentially silent regarding these factors." *Brief* [#19] at 24. Plaintiff further states that "the ALJ's discussions of the ALJ's daily activities [in connection with her complaints of pain and fatigue] are largely irrelevant because they deal very heavily with times that are irrelevant," and, "[t]herefore, the ALJ's conclusions regarding the functional effects of these impairments was not based on substantial evidence . . . ." *Id.*

The record belies these statements. The ALJ repeatedly discussed the evidence

regarding Plaintiff's pain, *see, e.g.*, AR 22, 24-27, 29-31, and fatigue, *see, e.g.*, AR 22-23, 29-30. Beyond discussing the underlying evidence, the ALJ specifically noted which parts of the RFC were fashioned, at least in part, to account for pain and fatigue. *See* AR 30 (discussing limitations on standing, walking, lifting, reaching, and work task difficulty). As noted above, the Tenth Circuit has repeatedly held that "an ALJ is not required to discuss every factor." *See, e.g.*, *Tuttle v. Comm'r, SSA*, 853 F. App'x 246, 252 (Mem.) (10th Cir. 2021). In *Tuttle*, the Court noted that the plaintiff had "not explained how an express discussion of any aggravating factors would have altered the ALJ's evaluation of her subjective complaints or undermined his RFC finding." 853 F. App'x at 252. Here, similarly, Plaintiff has not cited any evidence showing how, even if the ALJ had conducted a factor-by-factor analysis, the ALJ's evaluation of her subjective complaints should have affected her RFC. *See Brief* [#19] at 22-24. Thus, under the circumstances of this case, without such a showing, the Court finds that any error committed by the ALJ regarding discussion of Plaintiff's subjective symptoms was harmless.

### 2. Opinion Evidence

Plaintiff argues that the findings of the ALJ regarding the weight to be afforded the opinion evidence are not based on substantial evidence and do not adequately address the relevant factors set forth in the regulations. *Brief* [#19] at 24. The parties agree that Plaintiff's disability insurance benefits claim is governed by 20 C.F.R. § 404.1527 because this claim was filed on October 8, 2014, i.e., prior to the March 27, 2017 date on which the agency's regulations at 20 C.F.R. § 404.1520c took effect. *See Brief* [#19] at 25; *Response* [#20] at 9 n.3; *Reply* [#21] at 5.

For any opinion not entitled to controlling weight, "the ALJ must make clear how

much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in 20 C.F.R. § 404.1527 . . . for the weight assigned."  *Id.* (internal quotation marks, brackets, and footnote omitted).   Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

Plaintiff's primary complaint here appears to be that the ALJ did not conduct a factor-by-factor analysis in her evaluation of the opinion evidence.  *Brief* [#19] at 25 (asserting that "the ALJ was obligated to determine the weight to be afforded the medical opinions by evaluating them using the six factors spelled out in C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)").  However, although the six factors listed above are to be considered in weighing medical opinions, the Court does not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).  Here, Plaintiff has not explained with specificity how the ALJ erred as to the evaluation of each medical expert or shown how a factor-by-factor analysis could have changed the outcome of the ALJ's decision.

Plaintiff does point to a few sporadic issues with various medical experts without

tying those issues directly to these factors.  For example, Plaintiff complains that the ALJ afforded the greatest weight to Dr. Krishnamurthi and to Mary Buban, Psy.D., a clinical psychologist, even though both were only able to conduct a partial review of the records. *Brief* [#19] at 24.  However, she does not explain how any specific records these medical experts did not review could have impacted their opinions as well as the ALJ's evaluations of those opinions.  Although there could certainly be circumstances where these issues would cause harmful error, Plaintiff has not shown such here.  *See also Reply* [#21] at 5 (mentioning that Dr. Dhiman's opinion was also based on an incomplete record).

Plaintiff also states that the ALJ erred by discounting the opinion of Julie Kellaway, Ph.D. ("Kellaway), *see Brief* [#19] at 25, although, as Defendant notes, Plaintiff's discussion here appears to concern not Ms. Kellaway but, rather, Sherry Lindsey, LMFT ("Lindsey"), a treating therapist, *see Response* [#20] at 11 n.4.  Plaintiff does not mention either Ms. Kellaway or Ms. Lindsey in her Reply [#21], and the Court therefore proceeds with this argument as it pertains to Ms. Lindsey.  Plaintiff asserts that the ALJ gave little weight to Ms. Lindsey's opinion "largely because she was not an acceptable medical source," and that this was error because Ms. Lindsey "saw [Plaintiff] regularly and was involved in her treatment."  *Brief* [#19] at 25.  It is true than an opinion from an "unacceptable" medical source should not be disregarded solely on that basis. *Bowman v. Astrue*, 511 F.3d 1270, 1274-75 (10th Cir. 2008).  However, the ALJ did not do so here.  Rather, the ALJ engaged in a lengthy, detailed discussion of the reason why she was giving Ms. Lindsey's opinion little weight.  AR 27-28.  Plaintiff does not provide argument as to why this discussion was insufficient, and the Court finds no error here.

Thus, under the circumstances of this case, the Court finds that any error committed

by the ALJ regarding discussion of the opinion evidence was harmless.

### 3.     Substantial Evidence

Finally, Plaintiff argues that the ALJ erred because the findings of fact on which she based the RFC and the finding that Plaintiff was not disabled were not based on substantial evidence. *Brief* [#19] at 26.  Plaintiff essentially makes four sub-arguments here, which the Court addresses in turn.

First, Plaintiff argues that the ALJ erred by relying on evidence that Plaintiff engaged in part-time or temporary work during the closed period at issue.  *Brief* [#19] at 27-28.  She states that "the evidence of [Plaintiff's] part time and temporary work during the period in which she alleges disability is not relevant, because it does not conclusively establish [Plaintiff's] ability to perform substantial gainful activity in a competitive workplace." *Id.*  She asserts that "the ALJ did not . . . mak[e] . . . findings as to the reasons [Plaintiff] stopped working or whether those jobs were abandoned because of [Plaintiff's] impairments." *Id.* at 28.  In support, she states:

> For example, the record establishes that [Plaintiff's] work during the period at issue was often or always part time and of short duration.  At one point in the hearing, [Plaintiff] attempted to testify as to why she abandoned her part time job as a door greeter, but the ALJ cut her off.  Later, [Plaintiff] testified that she had to give up other jobs during the closed period because of her severe impairments.  However, the ALJ did not discuss this evidence with regard to whether these jobs constituted unsuccessful work attempts, but only as support of her finding that [Plaintiff] was not disabled.

*Id.* (internal citations omitted).

Plaintiff is correct that "work that [a claimant is] forced to stop or to reduce below the substantial gainful activity level after a short time because of [the claimant's] impairment [is considered] to be an unsuccessful work attempt."  20 C.F.R. 404.1574(a)(1).  However,

Plaintiff offers no legal authority, and the Court is aware of none, for her statement that an ALJ must make specific findings as to the reason a claimant stopped working and whether those jobs were abandoned because of the claimant's impairments.  *See Brief* [#19] at 28.  Pursuant to 20 C.F.R. § 404.1571:

> The work, without regard to legality, that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level. . . .  Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did. We will consider all of the medical and vocational evidence in your file to decide whether or not you have the ability to engage in substantial gainful activity.

Here, the ALJ appropriately considered Plaintiff's unsuccessful work attempts, *see* AR 25, 29, and discussed the reason provided by Plaintiff at the hearing for abandoning her job as a door greeter, i.e., because of her tendency to fall, *see, e.g.*, AR 22, 52, 55.  Plaintiff is also correct that an ALJ must "consider all evidence in the case record when [s]he makes a determination or decision whether claimant is] disabled," and that the ALJ must discuss "the significantly probative evidence [s]he rejects."  *See Brief* [#19] at 28 (quoting *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (internal alterations and citations omitted)).  However, the ALJ did not "reject" any evidence here identified by Plaintiff.  Rather, she thoroughly and appropriately discussed the evidence of Plaintiff's work attempts during the period at issue pursuant to 20 C.F.R. 404.1571.  Nothing more was required.  Accordingly, the Court finds no error on this issue.

Second, Plaintiff argues that the ALJ erred by relying on evidence that Plaintiff engaged in full-time work after the closed period ended.  *Brief* [#19] at 28-29.  Plaintiff states that, "[t]o infer, without explaining exactly why, that the lack of a noteworthy episode to explain [Plaintiff's] ability to work after October 9, 2019, means that she was able to work

before October 9, 2019, is taking inference too far." *Id.* at 29.  She states that "[t]his is particularly true in this matter because there was evidence that the ALJ failed to address the evidence that [Plaintiff's] employment after the closed period offered accommodations that could be found to render it 'sheltered,' yet the ALJ did not address this evidence at all in her decision." *Id.*

Plaintiff's cites AR 51 and 62 but does not mention what specific evidence on these pages she is referring to and does not explain how that evidence would render such employment "sheltered" and how that should have affected the ALJ's analysis here.  At AR 51, Plaintiff merely states that she was currently working at Love's Travel Stop for 39.87 hours per week as a cashier, where they worked with her to permit her to lift no more than five pounds at the job rather than the fifty pounds usually required.  At AR 62, Plaintiff states that she had no change in her physical condition in October 2019 when she began to work again, that she did not have a choice in needing to work, and that the only bad statement on her latest review had concerned her attendance.

Lacking explanatory argument from Plaintiff as to why these statements alone, and particularly the single accommodation regarding lifting, could lead to a finding that such employment was "sheltered," the Court cannot find that the ALJ committed reversible error here.  *See, e.g.*, 20 C.F.R. § 404.1574(a)(3) (stating that the mere fact that the claimant's job may have been performed in a sheltered environment is not sufficient to support a finding that she is not engaged in substantial gainful activity).  Plaintiff has cited no legal authority, and the Court is aware of none, that the ALJ may not take into account evidence that Plaintiff has worked during periods when her impairments have not materially differed from the period under consideration for benefits, especially when such evidence is one

component among many considered by the ALJ in her formulation of the RFC. Accordingly, the Court finds no reversible error on this issue. *See, e.g.*, *Cox v. Berryhill*, No. 17-2556-JWL, 2018 WL 3575648, at *3 (D. Kan. July 25, 2018) ("[A]lthough Plaintiff asserts a technical error in the ALJ's failure to state the sitting, and standing and/or walking requirements of sedentary work, she does not point to record evidence that she cannot meet those requirements. Therefore, even if the court were to assume an error in this regard, Plaintiff has shown no prejudice resulting from the alleged error.").

Third, Plaintiff argues that the ALJ erred in relying on Plaintiff's daily activities. *Brief* [#19] at 29. Plaintiff states that "[t]he activities that [Plaintiff] testified to were very light, mostly consisting of playing with her son and picking up around the house," and that "these limited activities . . . do not establish that [Plaintiff] could engage in light or sedentary work activity." *Id.*

Plaintiff is correct that these activities do not *establish* that Plaintiff could engage in light or sedentary work activities, but Plaintiff has provided no legal authority that this is the litmus test here. "An ALJ may consider a claimant's daily activities in assessing her allegations of disabling pain." *Trujillo v. Comm'r, SSA*, 818 F. App'x 835, 842 (10th Cir. 2020) (citing *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013)). In *Trujillo v. Commissioner, SSA*, 818 F. App'x at 843, the Tenth Circuit noted: "In *Wilson v. Astrue*, 602 F.3d 1136 (10th Cir. 2010), we upheld the ALJ's reliance on . . . daily activities to find that the claimant had 'the ability to care for herself, her home and her children.'" There, like here, the plaintiff had asserted that "her ability to care for herself and her daughter does not, by itself, demonstrate that she can engage in light work activity on a sustained basis." *Trujillo*, 818 F. App'x at 843. However, in that case, like here, "the ALJ did not rely solely

on that fact to conclude that [the plaintiff] is not disabled.  Rather, the ALJ appropriately cited [the plaintiff's] daily activities as one factor supporting [his] conclusion . . . ."  *Id.* (citing *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (holding evidence of daily activities is relevant even where it does not, by itself, establish the claimant can engage in light or sedentary work activities)).  The Tenth Circuit emphasized that "common sense, not technical perfection, is our guide."  *Id.* (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012)).  Here, as repeatedly discussed throughout this opinion, the ALJ discussed and relied on many different factors in reaching her conclusion.  Thus, it is of no moment that Plaintiff's limited daily activities, on their own, do not "establish" that Plaintiff could engage in light or sedentary work activity.  *Brief* [#19] at 29.  Accordingly, the Court finds no error on this issue.

Fourth, Plaintiff argues that the ALJ erred in her "cursory examination and dismissal of [Plaintiff's] neurological impairments."  *Brief* [#19] at 29.  Plaintiff states that "[t]his is particularly true of her failure to address the severe impairment of [f]ibromyalgia, an impairment known to cause chronic pain and fatigue, among other limiting symptoms, in the RFC or the narrative supporting it."  *Id.* at 29-30.  The Court has already analyzed Plaintiff's assertions regarding pain and fatigue above, and there is no need to reiterate that discussion here.  Regarding fibromyalgia specifically, the Court notes that the ALJ mentioned it a number of times throughout her decision. *See, e.g.*, AR 22 ("On a good day, [Plaintiff] reported that she would pick up little things around the house but spent a lot of time in bed because she was fatigued from fibromyalgia."), 24 (discussing medical records by Elizabeth Laws, M.D., which noted that Plaintiff "had standing diagnoses of fibromyalgia and whole body pain"), 25 (discussing Plaintiff's treatment for fibromyalgia by William

Shaffer, M.D., who stated that he "was not convinced that her pain was strictly fibromyalgia, as her reported symptoms were mostly in the lower extremities"), 30 (ALJ stating: "The claimant's knee disorder, lumbar disorder, and fibromyalgia in combination with obesity would be adequately addressed by limiting time on her feet to one hour of standing without interruption," along with other RFC limitations.).   The Court cannot find that the ALJ's discussion of fibromyalgia "cursory" and dismissive, as Plaintiff says.  *Brief* [#19] at 29.   Further, Plaintiff's reference to other "neurological impairments" is so vague here that the Court cannot discern the basis for her argument.  Accordingly, the Court finds no error on this issue.

## IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney fees.

Dated:  March 31, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge